HOLMES, Circuit Judge.
Jerry Lee Burkholder was charged with distributing a controlled substance, the use of which resulted in the death of Kyle Dollar, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(E). The latter provision imposes a fifteen-year statutory maximum sentence “if death ... results from the use” of certain controlled substances. See 21 U.S.C. § 841(b)(l)(E)(i). The district court declined to instruct the jury that, under § 841(b)(1)(E), the government was required to prove that Mr. Dollar’s death was a reasonably foreseeable result of the charged drug distribution. Mr. Burkholder was subsequently convicted. He now asks us -to vacate his conviction and reftiand for a new trial, arguing that the statute requires proof that the substance he distributed proximately caused Mr. Dollar’s death. Exercising jurisdiction Under 28 U.S.C. § 1291, we reject this argument and affirm the district court’s judgment.
I
On the evening of November 8, 2Ó12, Kyle Dollar (the decedent) spént several hours drinking' alcoholic beverages with friends at a residence in Rock Springs, Wyoming. ' Later that evening, the group traveled to the Astro Lounge club. Sometime after midnight, Mr. Dollar wandered away from his friends at the club to talk to other people. When' he rejoined the group, Mr. Dollar told them' that he was leaving; his brother came to the club to pick him up and took Mr. Dollar home. Later that night, Mr. Dollar returned to the Rock Springs address where earlier he had been drinking; he remarked that he “felt great,” and socialized before falling asleep. R., Vol. III, at 355-56 (Trial Tr., dated Sept. 24, 2013). The next morning, Mr. Dollar’s friends found him unresponsive and without a pulse; he was dead.
Local law-enforcement officers found no blood,. vomit, or obvious injuries on Mr. Dollar, and no drugs or drug paraphernalia. But they did review the text messages in Mr. Dollar’s .cell phone; they revealed an exchange of messages between Mr. Dollar and Mr. Burkholder (the defendant) between 2:30 a.m. and 4:30 a.m. on November 9. These messages, as well as subsequent interviews, led the officers to search Mr. Burkholder’s residence. They seized there a Crown Royal bag containing Su-boxone tablets and Suboxone wrappers.
*610 Suboxone is a prescription drug. An active ingredient in it is buprenorphine, a Schedule III controlled substance, which is an opioid commonly prescribed for treating heroin addicts. Mr. Burkholder, a recovering addict, had been prescribed Su-boxone as part of his treatment plan. At the time he was prescribed the drug, Mr. Burkholder signed a treatment agreement with his doctor in which he “agree[d] not to sell, share or give any [buprenorphine] to another person.” Id. at 531-32 (Trial Tr., dated Sept. 25, 2013). The agreement further evinced his understanding that “mixing buprenorphine with other , medications ... and/or other drugs of abuse, including alcohol, can .be dangerous.” Id. at 532. Nevertheless, Mr. Burkholder admitted to the police that he had given Mr. Dollar a Suboxone tablet in the Astro Lounge’s restroom while Mr. Dollar was there the night of November 8.
Mr,. Burkholder was subsequently placed under arrest and indicted by a federal grand jury on one count of “knowingly, intentionally, and unlawfully distributing] buprenorphine, a Schedule III controlled substance, the use of which resulted in the death of Kyle Dollar,” in violation' of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(E). ,R„ Vol. I, at 13 (Indictment, filed Mar. 21, 2013). At Mr. Burkholder’s trial, the government presented two expert witnesses: Dr. James Wilkerson, the medical examiner who performed the autopsy on Mr. Dollar, and Dr. Robert Palmer, a forensic tokicologist. Both experts opined that Mr. Dollar’s death was the reáult of his consumption of a combination of búpre norphine arid alcohol. Dr. Wilkerson, for example, déscribed how Mr. Dollar’s lungs showed signs of a pulmonary edema, or fluid in the lungs, which is a hallmark of death by opioid overdose.[1] Furthermore, according to Dr. Palmer, the testimony of Mr. Dollar’s friends completed the picture: “initially feeling pretty good and then maybe feeling a little sick ... then getting sleepier; then as the airways relax,— breathing against increased - resistance” were all “consistent with opioid-related intoxication.” R., Vol. III, at 322.
Mr. Burkholder’s own expert—a toxicologist, Robert Lantz—agreed that Mr. Dollar had ingested buprenorphine and was “metabolizing some of it” prior to his death, id. at 585-86, but viewed Dr. Wilkerson’s conclusion that buprenorphine was the cause of Mr. Burkholder’s death to be unsupported. According to Dr. Lantz, buprenorphine has a “ceiling effect” and does not depress a person’s respiration beyond a certain point. Id, at 560-61. Instead, he believed it was more likely that Mr. Dollar had died from overdosing on a “synthetic” drug, which general drug-screening procedures would not have detected. Id. at 561. Further, Dr. Marvin Couch, who prescribed Mr. Burkholder the Suboxone, testified that he would not have anticipated that death would result from the low dosage Mr. Dollar apparently consumed.
At the jury-instruction conference, Mr. Burkholder asked the court to instruct the jury that, in order to convict him under § 841(b)(l)(E)(i), it was obliged to find that Mr. Dollar’s death was a reasonably foreseeable result of the distribution of Suboxone.[2] However, the district court declined, *611 concluding instead that the statute did “not impose a ‘reasonable foreseeability’ requirement,” and that “but for” causation was all that was required. R., Vol. Ill, at 613. As such, the court rejected the inclusion of any “proximate cause” or “foreseeability” element in the, jury instructions. It instructed the jury as follows regarding the crime of death resulting from drug distribution:
Before you may find the. Defendant guilty of the offense charged in the indictment, you must find by proof beyond a reasonable doubt that Kyle Dollar’s death resulted from the use of the bu-prenorphine distributed by the Defendant.
This standard is satisfied upon a finding by you that, but for Kyle Dollar ingesting the buprenorphine distributed by the Defendant, Kyle Dollar would not have died.
R., Vol. I, at 111 (Jury Instrs., filed Sept. 26, 2013) (emphasis added). After receiving the court’s instructions, including this one—and considering the evidence—the jury found Mr. Burkholder guilty. Mr. Burkholder timely appealed from the district court’s judgment.[3]
H
'The sole issue Mr. Burkholder raises on appeal is whether the district court erred in declining to instruct the jury that* in order to convict him- under 21 U.S.C. § 841(b)(1)(E), it was required to find’that Mr. Dollar’s death was a reasonably foreseeable consequence, of Mr. Burkholder’s distribution of buprenorphine. Resolution of this issue turns on a question of statutory interpretation: " Does 21 U.S.C. § 841(b)(1)(E)—-which, establishes a statutory-maximum sentence of fifteen years’ imprisonment for the distribution of a Schedule III controlled substance if “death ... results from the use of’ that substance—require proof of proximate causation?[4]
To the extent that Mr. Burkholder challenges “the district court’s instruction because the court allegedly failed to accurately give the jury, the correct law”—and to the extent that determining the “correct *612 law” requires us to engage in statutory-interpretation—our review is de novo. United States v. Porter, 745 F.3d 1035, 1040 (10th Cir.2014); accord United States v. Sturm, 672 F.3d 891, 897 (10th Cir.2012) (en banc); see also United States v. Nacchio, 573 F.3d 1062, 1087 (10th Cir.2009) (“We review questions of statutory interpretation de novo.”).
A
1
At the outset, we' provide a brief overview of the structure of 21 U.S.C. § 841 to help clarify the nature of our interpretive inquiry. Section 841(a)(1) makes it unlawful, inter alia, to knowingly or intentionally “distribute ... a controlled substance.” Section 841(b) provides the penalties for that unlawful act. As relevant here, subsection (1)(E)(i) of § 841(b) says that
in the case of any controlled substance in schedule III, such person shall be sentenced to a term of imprisonment of not more than 10 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 15 years.
21 U.S.C. § 841(b)(1)(E)(i). As these plain terms reveal, the death-results-from provision operates in the statute to enhance the maximum penalty for the knowing or intentional distribution of a Schedule III controlled substance to fifteen years. If the provision is not triggered, the statutory-maximum penalty for such an offense is ten years. Though it does not specify the actus reus for the offense (i.e., distribution of a controlled substance) or the offense’s mens rea (i.e., knowing or intentional), it is now well-settled that such a penalty-enhancement provision must be charged in the indictment and proved by the government beyond a reasonable doubt because it has the effect of increasing the statutory maximum penalty. See, e.g., Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (“Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”).
It is undisputed here that the inquiry into whether death “results from the use” of the distributed controlled substance is, at bottom, one of causation (i.e., Was the death caused by the use?).[5] Mr. Burkhold *613 er contends that the death-results-from provision requires that the use of the controlled substance be more than the “but-for cause” or “cause in fact” of the death— that is, it must be more than simply “[t]he cause without which the.event could not have occurred.” But-for Cause, Black’s Law Dictionary (10th ed.2014); see, e.g., In re Fisher, 649 F.3d 401, 403 (5th Cir. 2011) (“An act is a but-for cause of an event if the act is a sine qua non of the event—if, in other words, the absence of the act would result in the non-occurrence of the event.”); Wayne R. LaFave, Substantive Criminal Law § 6.4 (2d ed. database updated Oct. 2015) (“In order that conduct be the actual cause of a particular result, it is almost always sufficient that the result would not have happened in the absence of the conduct; or; putting it another way, that ‘but for’ the antecedent conduct the result would not have occurred.”).
In Mr. Burkholder’s view, § 841(b)(1)(E)(i) demands that the use be the “proximate cause” or “legal cause” of the death—meaning- that the cause must be “legally sufficient to result in liability; an act or omission that is considered in law to result in a consequence, so that liability can be imposed on the actor.” Proximate
Cause, Black’s Law Dictionary (10th ed.2014). As Justice O’Connor has noted “proximate cause principles inject a foreseeability element into [a] statute.”- Babbitt v. Sweet Home Chapter of Cmtys. for a Greater Oregon, 515 U.S. 687, 713, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995) (O’Connor, J., concurring); see United States v. Hargrove, 714 F.3d 371, 374 (6th Cir.2013) (“To be proximately caused, the harm must be reasonably foreseeable.”); United States v. Hatfield, 591 F.3d 945, 949 (7th Cir.2010) (noting that “‘proximate cause’ usually implies foreseeability”); United States v. Hanousek, 176 F.3d 1116, 1123 (9th Cir.1999) (“To prove proximate cause, the government must establish that the harm was a foreseeable result, of the conduct.”); Henry v. Merck & Co., 877 F.2d 1489, 1495 (10th Cir.1989) (noting that “foreseeability is the standard by which proximate cause ... is to be tested”); see also In re Antrobus, 519 F.3d 1123, 1126 (10th Cir.2008) (Tymkovich, J., concurring) (where “the harm must ‘proximately’ result from the crime,” examining the record to discern whether defendant’s “crime was a reasonably foreseeable result of the illegal [conduct]”); cf. United States v. Apollo Energies, Inc., 611 F.3d 679, 690 n. 5 (10th Cir.2010) (“We emphasize that ‘foreseeabil *614 ity’ in the proximate cause sense is not foreseeability of a legal rule.”).
2
“As with all statutory interpretation cases, we begin with the language of the statute.” Salazar v. Butterball, LLC, 644 F.3d 1130, 1136 (10th Cir.2011). The plainness of statutory language “is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Id. at 1137 (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).
In that regard, Congress’s' specific choice of the words in § 841(b)(1)(E)(i)— that is, “death ... results from the use' of such substance”—is noteworthy. To begin with the obvious, Congress decided to use “results from” instead of “causes.” As we have stated, in a different context, “[r]e-sulting in death and causing death are not equivalents.” United States v. Cardena-Garcia, 362 F.3d 663, 666 (10th Cir.2004). In Cardena-Gareia, we addressed a provision of the United States Sentencing Guidelines Manual (“U.S.S.G” or “Guidelines”) relating to the offense of transporting or harboring unlawful aliens “resulting in the death of any person.” See 8 U.S.C. § 1324(a). We concluded that the specific Guidelines provision did not establish a proximate-cause requirement “and we ha[d] no license to impose one”; “if a death resulted from the transportation, [the] enhancement [wa]s required.” Cardena-Garcia, 362 F.3d at 665-66. Generally, then, “the ordinary meaning of ‘result[s] from’ imposes a requiremént of actual or but-for causation,” and not proximate causation. United States v. Ramos-Delgado, 763 F.3d 398, 401 (5th Cir.2014), cert. denied, — U.S. —, 135 S.Ct. 771, 190 L.Ed.2d 641 (2014).
Further, the use of the passive voice evinces a concern with “whether something happened—not how or why it happened.” Dean v. United States, 556 U.S. 568, 572, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009); see Dubbs v. Head Start, Inc., 336 F.3d 1194, 1206 (10th Cir.2003) (“The [Fourth] Amendment is expressed in passive voice.... The focus of the Amendment is thus on the security of the person, not the identity of the searcher or the purpose of the search.”); see also E.I. du Pont de Nemours & Co. v. Train, 430 U.S. 112, 128, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977) (“The question of the form of § 301 limitations is tied to the question whether the Act requires the Administrator or the permit issuer to establish the limitations. Section 301.,does not itself answer this question, for it speaks only in the passive voice of the achievement and establishment of the limitations.” (emphasis added)); cf. Jones v. United States, 526 U.S. 227, 258, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (“[T]here is some significance in the use of the active voice in the main paragraph and the passive voice in clauses (2) and (3) of § 2119. In the more common practice, criminal statutes use the active voice to define prohibited conduct.” (emphasis added)). In this vein, interpreting identical language -in another clause of § 841(b), the Ninth Circuit concluded that the use of “passive language unambiguously eliminates any statutory requirement ’that the death have been foreseeable. According to its language, as long as death ‘results’ from the use of a described controlled substance,” the defendant faces the statutorily-mandated sentence. United States v. Houston, 406 F.3d 1121, 1124 (9th Cir.2005). Thus, the causal language that Congress employed itself strongly suggests that § 841(b)(1)(E)(i) requires only but-for causation.
*615 Broadening our analytical lens only bolsters this conclusion.[6] Even a cursory survey of federal criminal statutes reveals numerous instances. ,in -which Congress explicitly included proximate-cause language in statutory penalty enhancements. See, e.g., 18 U.S.C. § 38(b)(3) (stating, in relation to fraud involving aircraft or space vehicle parts, that a twenty-year maximum sentence may be imposed where “the part ... is the proximate cause of a malfunction .., that results in the death” (emphasis added)); id. § 844 (authorizing the imposition of the death penalty “if death results to any person, ... as a direct or proximate result of conduct prohibited by this subsection” (emphasis added)). Compare 18 U.S.C. § 247(d)(2). (“[I]f bodily injury results to any person ... as a direct or proximate result of conduct prohibited by this section, ... imprisonment for not more that 40 years” is permitted, (emphasis added)), with id. ' §' 247(d)(1) (“[I]f death results from acts committed in violation Of this section ... imprisonment for any term of years or for life,” or a death sentence is authorized, (emphasis added)). This evinces that Congress clearly knew how to add a proximate-cause requirement in criminal penalty-enhancement statutes when it wished to do so. That it nevertheless did not do so in § 841(b)(1)(E) is thus very telling; indeed, it suggests that Congress intended to. ómit a proximate-Cause *616 requirement - from § 841(b)(1)(E). See, e.g., Touche Ross & Co. v. Redington, 442 U.S. 560, 572, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (“Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.”); United States v. Holmes, 727 F.3d 1230, 1244 (10th Cir.2013) (“Congress knew how to draft a period of limita-tions.... That Congress chose not to ... does not appear accidental, and we must honor Congress’s choice.”); Hackwell v. United States, 491 F.3d 1229, 1235-36 (10th Cir.2007) (noting that “the distinction in meaning between compensation for ‘services rendered’ and ‘expenses’ is further exemplified by several federal statutes,” and concluding that “[t]he [statute’s] text and Congress’s consistent, repeated distinction between ‘services rendered’ and ‘expenses’ demonstrates Congress’s intent to exclude expenses from the attorney-fee limitation”).
Furthérmore, the omission of such proximate-cause language is especially suggestive of Congress’s intent not to require proximate causation in § 841(b)(1)(E)® because Congress included the language at issue here—viz., “death ... results from the use”—in 2008, after our sister circuits uniformly had held that identical language in § 841(b)(1)(C) lacked a proximate-cause element.[7] See Houston, 406 F.3d at 1124 (“The plain language of § 841(b)(1)(C) demonstrates that proximate cause is not a required element.”); United States v. McIntosh, 236 F.3d 968, 972 (8th Cir.2001) (“We hold that this language is unambiguous and that giving effect to its plain meaning prohibits us from superimposing upon the statute a foreseeability or proximate cause requirement.”), abrogated on other grounds by Burrage v. United States, — U.S. —, 134 S.Ct. 881, 892, 187 L.Ed.2d 715 (2014); United States v. Robinson, 167 F.3d 824, 832 (3d Cir.l999) (“Plainly, if we read a particularized foreseeability requirement into [§ 841(b)(1)(C) ], we would limit the applicability of the section significantly and frustrate Congress’ intent.”); United States v. Patterson, 38 F.3d 139, 145 (4th Cir.1994) (“Quite simply, the plain language of § 841(b)(1)(C) does not. require, nor does it indicate, that prior to applying the enhanced sentence, the.district court must find that death resulting from the use of a drug distributed by a defendant was a reasonably foreseeable event.”); see also United States v. Webb, 655 F.3d 1238, 1250, 1254-55 (11th Cir.2011) (“[Section] 841(b)(1)(C)’s enhanced penalty requires only proof that the death resulted from the victim’s use of a controlled substance dispensed by the defendant.”); United States v. De La Cruz, 514 F.3d 121, 138 (1st Cir.2008) (“What is required under the death-enhancing statute is that the government prove cause-in-fact, that is, that the decedent’s death was caused in fact by his or her use of drugs that were distributed either, by the defendant himself or by others in a conspiracy of which the defendant was a part.”).[8]
*617 More specifically, with Congress’s presumed knowledge of the uniform holdings of our sister circuits, see, e.g., Shook v. El Paso Cnty., 386 F.3d 963, 970 (10th Cir.2004) (“Congress is ‘presumed to be aware’ of a statute’s interpretation when it amends another part of the same statute without addressing .the part at issue.” (quoting Dep’t of Hous. & Urban Dev. v. Rucker, 535 U.S. 125, 133 n. 4, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002))), we believe that its decision to use identical language in enacting § 841(b)(1)(E) without codifying therein a proximate-cause requirement strongly suggests that Congress intentionally eschewed such a requirement, see, e.g., Bragdon v. Abbott, 524 U.S. 624, 645, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (“When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well.”); Manhattan Props., Inc. v. Irving Trust Co., 291 U.S. 320, 336, 54 S.Ct. 385, 78 L.Ed. 824 (1934) (“From 1898 to 1932 the Bankruptcy Act was amended seven times without alteration of the section. This is persuasive that the construction adopted by the courts has been acceptable to the legislative arm.of the government.” (footnote omitted)); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 323 (2012) (in discussing, the “prior-construction canon,” stating “when a statute uses the very same terminology as an earlier statute—especially in the very same field ...—it is reasonable to believe that the terminology bears a consistent meaning”).[9] Moreover, Congress’s *618 subsequent amendments to § 841(b) have also left § 841(b)(1)(E)’s language undisturbed, see Fair Sentencing Act of 2010, Pub.L. No. 111-220, 124 Stat. 2372, §§ 2, 4, further signaling Congress’s satisfaction with the meaning courts have attributed to it.
In- sum, based on the' foregoing, wé reach the conclusion that § 841(b)(1)(E) does not require proof of proximate causation.
B
In arguing against this outcome', Mr. Burkholder holds steadfastly to “the notion that Congress makes law with an awareness of common-law rules,” Aplt. Opening Br. at 18, and asks that we interpret § 841(b)(1)(E) in light of the traditional common-law principle that causation implies both actual (i.e., but for) and proximate causation. He points to three decisions—two from the Supreme Court and one from our court—that, he claims, require us to follow the common law and interpret “results from” to encompass proximate causation. Yet neither the presumption against change from the common law that Mr. Burkholder raises, see, e.g., Scalia & Garner, supra, at 318 (“The better view is that.statutes will not be interpreted as changing the common law unless they effect the change with clarity.”), nor the cases upon which he relies, dissuade us from the view that § 841(b)(1)(E)’s “results from” language does not embody a proximate-cause requirement.
As an initial matter, while we recognize that “[i]n order to abrogate a common-law principle, the statute must ‘speak directly’ to the question addressed by the common law,” United States v. Texas, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) (quoting Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978)), our earlier examination of the plain language and statutory context of § 841(b)(1)(E) reveals that Congress has actually'spoken loudly and clearly: proximate cause does not play a role in § 841(b)(1)(E), see Robinson, 167 F:3d at 831 (in construing identical results-from language in § 841(b)(1)(C) stating, “It is obvious Congress intended ... that [a] mandátory minimum would apply if death ... resulted from the use of the substance without regard for common law proximate cause concepts.” (emphasis added)); see also Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 958 (9th Cir.2013) (“Congress need not ‘affirmatively proscribe’ the common law principle to evince [its] intent.” (quoting Texas, 507 U.S. at 534, 113 S.Ct 1631)). Our analysis and conclusion are therefore consistent with this rule of statutory construction.
Moreover, none of the three cases on which Mr. Burkholder relies compels a different result. He first directs us to Burrage v. United States, — U.S. —, 134 S.Ct. 881, 187 L.Ed.2d 715 (2014), where the Supreme Court granted certio-rari to address the causation requirement imposed by 21 U.S.C. § 841(b). The Court began with the general observation that causation “consist[s] of two constituent parts: actual [i.e, but-for] cause and legal [i.e., proximate] cause,” but while it held that the “results from”-language, “imposes ... a requirement of actual causality,” it’expressly declined to decide whether *619 the phrase also embodies a proximate-cause requirement. Burrage, 134 S.Ct. at 887. Thus, Burrage does not answer the question we face in this appeal—let alone resolve it in Mr. Burkholder’s favor.
Indeed, much of the Court’s discussion in Burrage of “results from” tends to undermine his .claim. The Court specifically noted that the “ordinary meaning” of “results from” bespeaks but-for causation, id., and observed. that “[w]here -there is no textual or contextual indication to the contrary, courts regularly read phrases like ‘results from’ to require but-for causality,” id. at 888; see also id. at 889 (‘‘[i]t is one of the traditional background principles ‘against which Congress legislate[s],’ that a phrase such as ‘results from’ imposes a requirement of but for causation.” (second alteration in original) (citation omitted)). Therefore, Mr. Burkholder’s reliance on Burrage is wholly misplaced.
Nor does his second Supreme Court case, Paroline v. United States, — U.S. —, 134 S.Ct. 1710, 188 L.Ed.2d 714 (2014), provide Mr. Burkholder any succor. There, the Court faced a statute dealing with the restitution owed to child-pornography victims; this statute explicitly included a proximate-cause requirement in a catchall provision. Paroline, 134 S.Ct. at 1720. This circumstance, the court concluded, made its “interpretive task ... easier.” Id. In contrast, § 841(b)(1)(E)(i) does not expressly contain any - similarly helpful proximate-cause language.
Furthermore, although the Court indicated that even in the absence of an “express reference to proximate causation, [it] might well [have held] that a showing of proximate cause was required,” id., this dicta does not avail Mr. Burkholder. While we are undoubtedly “bound by the Supreme Court’s considered dicta almost as firmly, as by the Court’s outright holdings,” Tokoph v. United States, 774 F.3d 1300, 1303-04 (10th Cir.2014) (quoting Pittsburg & Midway Coal Mining Co. v. Watchman, 52 F.3d.1531, 1540, n. 10 (10th Cir.1995)), the general possibility that the Court might read a proximate-cause requirement into another statute—in the absence of any express reference to it—does not mean that we should, much less must, do so ip the context of §, 841(b)(1)(E)(i), see, e.g., Scalia & Garner, supra, at 56 (noting that “words are given meaning- by their context”); id. at 323 (“As we have be,en at pains to. point out through this treatise, context is -as important.....”). Where, as here, Congress’s intent to eschew a proximate-cause requirement is pellucid, our reasoned judgment indicates that,. Congress -intended to abrogate the common-law understanding of causation. See Texas, 507 U.S. at 534, 113 S.Ct. 1631 (“Just as longstanding is the principle that ‘[statutes which invade the common law ... are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.’ ” (alteration in original) (emphasis added) (quoting Isbrandtsen Co. v. Johnson, 343 U.S. 779, 783, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952))); accord Joy Techs., Inc. v. Sec’y of Labor, 99 F.3d 991, 997 (10th Cir.1996) (rejecting “strict adherence to the common law” in interpreting a provision of the Miné Act where doing so would be. inconsistent with the statute’s clear language and purpose).
Finally, Mr. Burkholder looks to our decision in United States v. Woodlee, 136 F.3d 1399 (10th Cir.1998). He claims that, in that case, we read the. phrase “if bodily injury results” in a felony prosecution under 18 U.S.C. § 245(b) to “require not just actual causation, but proximate causation as well.” Aplt. Opening Br. at 20 (emphasis added). According to Mr. Burkholder, *620 Woodlee and this case involve “the same thing.” Id. We disagree.
We dispatch Mr. Burkholder’s argument by zeroing in on' the critical logical distinction between that case and this one, which his contentions elide: the focus in Woodlee was on what is sufficient for the imposition of the penalty enhancement—not, as here, on what is necessary. In Woodlee, after acknowledging at the outset that the issue presented was really one of causation and not mens rea, see 136 F.3d at 1405, the court concluded that the government was not obliged to prove that the defendants intended to cause the bodily injury in order to make them eligible for § 245(b)’s felony penalty;. it was “sufficient” for the government to prove that the bodily injury was (objectively) foreseeable, id. at 1406 (noting that “merely foreseeing some bodily injury [wa]s sufficient ” (emphasis added)).
Yet, as a logical matter, it does not ineluctably follow from Woodlee’s holding that foreseeability is a necessary causation standard, in addition to being a sufficient one. In other words, Woodlee is silent regarding whether, absent a showing of foreseeability, the government would have been unable to establish a felony under § 245(b).[10] Indeed, Woodlee does not necessarily preclude the possibility that a less-demanding causation standard—such as but-for causation—would also be sufficient to provide the basis for a felony under § 245(b).[11] That question *621 was not before the court in Woodlee, and we certainly do not address it here. But we do say that, unlike Woodlee, our concern in this case is not what is merely sufficient; instead, it is what is necessary. Our vantage point in this way is different than that of the panel in Woodlee. And, because it is, Woodlee’s holding regarding foreseeability does not signal, much less demand, that we disregard the clear message from § 841(b)(l)(E)’s plain language and statutory context—that is, but-for causation is all that is necessary.[12]
In sum, where Congress has unambiguously expressed a desire to deviate from background common-law principles, we must give effect to this intent. Here, we are convinced that the plain language and statutory context of the “results from” language in § 841(b)(1)(E) reveal a clear Congressional choice to forgo a proximate-cause requirement.-
C
We thus hold that § 841(b)(l)(E)’s provision that “death ... results from the use” of a Schedule III controlled substance requires only proof of but-for causation. As. such, the district court did not err in rejecting Mr. Burkholder’s request for a proximate-cause jury instruction. The instruction the court did give—viz., that “but for Kyle Dollar ingesting the buprenorphine distributed by the Defendant, Kyle Dollar would not have died,” R., Vol. I, at 111—was a legally adequate statement of the law.
III
For the foregoing reasons, we AFFIRM the district court’s judgment.

. Dr. Wilkerson explained to the jury that opioids impede respiration; they "tell[] your brain to stop giving you the impulse to breathe, and you stop breathing and. your heart rate stops.” R., Vol. III, at 256.

. It appears that Mr. Burkholder did not file a set of proposed jury instructions. At the jury-instruction conference, his counsel indicated that he had "been trying to draft ... ‘proximate cause’ and ‘foreseeable’ instructions for ... about a couple [of] weeks.” R., Vol. Ill, at 612 (emphasis added).

. As computed by the United States Probation Office, the United States Sentencing Guidelines Manual (2012 edition) prescribed ah advisory sentence range for Mr. Burkholder of seventy to eighty-seven months’ imprisonment. By its plain terms, because he was convicted of the death-resulting offense under 21 U.S.C. § 841(b)(1)(E)(i), the Guidelines assigned Mr. Burkholder to a higher base offense level—i.e., twenty-six—than would otherwise have been applicable. See U.S.S.G. § 2D 1.1 (a)(4). Specifically, if the death-resulting provision had not been implicated, Mr. Burkholder’s base offense level probably would have been six, but no higher than twenty. See U.S.S.G. § 2D1.1(a)(5) (absent the death-resulting enhancement, referencing the drug table of subsection (c)). Compare U.S.S.G. § 2Dl.l(c)(17) (assigning, as relevant here, a base offense level of six to violations of 21 U.S.C. § 841 involving ”[l]ess than 250 units of Schedule III substances”), with id. § 2D1.1(c)(10) (providing for, as relevant here, a base offense level of twenty to violations of 21 U.S.C. § 841 involving “40,000 or more units of Schedule III substances”). The district court sentenced him to a within-Guidelines sentence of seventy-eight months in prison afid three years of supervised release. Mr. Burkholder does not challenge the reasonableness of his specific sentence on appeal. Moreover, he does not dispute the general validity of the statutory maximum penalty of fifteen years established by 21 U.S.C. § 841(b)(1)(E)(i) for Schedule III drug distributions resulting in death. Accordingly, we have no occasion to áddress these matters here.

. We were previously asked to decide this question in United States v. MacKay, 715 F.3d 807 (10th Cir.2013); however, “because of the posture of [that] case, we d[id] not opine on whether § 841(b)’s language contained] a foreseeability or proximate cause requirement.” 715 F.3d at 825.

. Relying on the principle that strict-liability criminal offenses are "generally disfavored,” the Dissent mistakenly casts our holding today as stripping away § 841’s mens rea requirement. Dissent at 623 (quoting United States v. U.S. Gypsum Co., 438 U.S. 422, 438, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978)). Mens rea is unquestionably the central concern of the strict-liability concept in the criminal context. See, e.g., Strict-liability Crime, Black's Law Dictionary (10th ed. 2014) ("An offense for which the action alone is enough to warrant a conviction, with no need to prove a mental state....”). However, we have never suggested that our analysis relates to mens rea—the proper focus here is on causation. Indeed, in grappling with a similar matter in United States v. Woodlee, we squarely rejected defendants’ misguided framing of the question in terms of intent (i.e., mens rea), noting that the relevant standard is “one of causation, not state of mind," 136 F.3d 1399, 1405 (10th Cir.1998) (emphasis added).
In this regard, as we have noted, the crime charged in Mr. Burkholder’s indictment alleged a violation of 21 U.S.C. §§ 841(a)(1) and (b)(l)(E)(i). The Supreme Court has stated that this crime "has two principal elements: (i) knowing or intentional distribution [of a controlled substance], § 841(a)(1), and (ii) death caused by (‘resulting from’) the use of that drug, [§ 841(b)].” Burrage v. United States, — U.S. —, 134 S.Ct. 881, 887, 187 L.Ed.2d 715 (2014). It is beyond peradventure that " ‘[r]esults from’ imposes ... a requirement of actual causality." Id. (emphasis added). Significantly, the Supreme Court did *613 not indicate that a separate mens rea requirement attaches to the second element of this crime. Cf. Flores-Figueroa v. United States, 556 U.S. 646, 647, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009) (holding that "[a] federal criminal statute forbidding aggravated identity theft” that enhances the criminal penalty when "the offender knowingly transfers, possesses,' or uses, without lawful authority, a means of identification of another person.... requires the Government to show that the defendant knew that the means of identification he or she unlawfully transferred, possessed, or used, in fact, belonged to another person.” (quoting 18 U.S.C. § 1028A(a)(1) (internal quotation marks omitted))). This reinforces the point that the question here is one of causation—not mens rea.
We recognize that the Dissent is not alone in this confusion. Indeed, in addressing identical language in 21 U.S.C. § 841(b)(1)(C), some of our sibling circuits have made linguistic references that bespeak mens rea. See United States v. Hatfield, 591 F.3d 945, 950 (7th Cir.2010) (expressing "misgivings about interpreting ‘results from’ in the statute to impose strict liability”); see also United States v. Rebmann, 226 F.3d 521, 522, 525 (6th Cir.2000) ("On its face, the statute [i.e., 21 U.S.C. § 841] is, in effect, a strict liability statute with respect to the injury or death of another arising out of the distribution of drugs.”). However, as the Supreme Court has indicated in Burrage, the question before us is one of causation.

. The Dissent contends that our decision to employ a broad analytical lens to further support our interpretation of the statutory language is at odds with an interpretation "tethered to the ‘plain language.’ ” Dissent at 625. However, we must disagree with our thoughtful colleague in dissent. In particular, we respectfully submit that the Dissent’s objection is misguided. “[I]t is a fundamental canon of statutory construction that the Words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) (emphasis added); accord First Nat’l Bank of Durango v. Woods (In re Woods), 743 F.3d 689, 694 (10th Cir.2014); see also Deal v. United States, 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993) (It is a “fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.”). Indeed, “[w]e begin our analysis by examining the subsection’s structure, as 'the meaning of statutory language, plain or not, depends bn context.’ ” In re Woods, 743 F.3d at 694 (emphasis added) (quoting United States v. Villa, 589 F.3d 1334, 1343 (10th Cir.2009)); see Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 33 (2012) ("This critical word context embraces not just textual purpose but also (1) a word’s historical associations acquired from recurrent patterns of past usage, and (2) a word’s immediate syntactic setting—that is, the words that surround it in a specific utterance.”).
Contrary to the Dissent’s view that "only ambiguity” compels us to look to statutory context, Dissent at 625, "[t]he plainness or ambiguity óf statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader-context of the statute as a whole.” Robinson, 519 U.S. at 341, 117 S.Ct. 843; accord Util. Air Regulatory Grp. v. E.P.A., — U.S. —, 134 S.Ct. 2427, 2442, 189 L.Ed.2d 372 (2014); Cullen v. Pinholster, 563 U.S. 170, 182, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011); David v. Sirius Computer Solutions, Inc., 779 F.3d 1209, 1211 (10th Cir.2015). Furthermore, because we are narrowly focused on the statutory language and its context, we believe that our inquiry is more apt to properly discern Congress's intent than the Dissent’s, -which relies on largely extratextual sources. See Scalia & Gamer, supra, at 3 ("In an age when democratically prescribed texts (such as statutes, ordinances and regulations) are the rule, the judge’s principal function is to give those texts their fair meaning”); id. at 33 (“This critical word context embraces not just textual purpose but also (1) a word’s historical associations, acquired from recurrent patterns of- past usage, and (2) -a word’s immediate syntactic setting—that is, the words, that surround it in a specific utterance.”).

. It was added to the federal criminal code by the Ryan Haight Online Pharmacy Consumer Protection Act of 2008, Pub.L. No. 110-425, 122 Stat. 4820, § 311(e). "

. Indeed, our research-has not uncovered even one circuit that has held that the “results from’’ language in § 841(b)(1)(C), which employs the same language as § 841(b)(1)(E), requires'proof of proximate-causation.-- We do note that the Seventh Circuit has expressed misgivings in dicta about construing § 841(b)(1)(C) as having no foreseeability or state-of-mind requirement. See United States v. Hatfield, 591 F.3d 945, 950-51 (7th Cir. 2010). The Seventh Circuit in Hatfield nonetheless conceded that the statute’s plain language suggests that the omission of a foreseeability requirement was deliberate, to wit:
We have some misgivings about interpreting “results from” in the statute to impose *617 strict liability. That could lead to some strange results. Suppose that, unbeknownst to the seller of an illegal drug, his buyer was intending to commit suicide by taking an overdose of drugs, bought from that seller, that were not abnormally strong, and in addition the seller had informed the buyer of the strength of the drugs, so that there was no reasonable likelihood of an accidental. overdose. Yet the cases are unanimous and emphatic that section 841(b)(1)(C) imposes strict liability.... The cases emphasize the "plain meaning” of the statute, by which they mean simply the omission of any reference to foreseeability or state of mind, and point out that criminal statutes commonly do specify the required state of mind or other ground of culpability (such as negligence) rather than leaving it to be filled in by the judges (as under the Model Penal Code, which provides that proof of guilt óf a statute that does not specify a state of mind or other standard of culpability requires proof of at least recklessness). And from this they infer that the omission of any such requirement from section 841(b)(1)(C) was deliberate, and so liability must be strict. "
Id. (emphasis added) (citations omitted).

. The Dissent opines that we “read[] too much into Congress’s decision to utilize the same phrasing in § 841(b)(1)(E) that it previously utilized in § 841(b)(1)(C).” Dissent at 626. However, “[t]he normal rule of statutory construction assumes that ‘identical words used in different parts of the same act are intended to have the same meaning.’ ” Sorenson v. Sec’y of Treasury, 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) (quoting Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 87, 55 S.Ct. 50, 79 L.Ed. 211 (1934)); accord Law v. Siegel, — U.S. —, 134 S.Ct. 1188, 1198, 188 L.Ed.2d 146 (2014). We are assured in the soundness of our holding here by the legion of authority that has applied this rule of consistent usage. See e.g., Dep’t of Revenue of Oregon v. ACF Indus., Inc., 510 U.S. 332, 342, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994); Sullivan v. Stroop, 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990); United States v. Laureano-Perez, 797 F.3d 45, 61 (1st Cir.2015); Shammas v. Focarino, 784 F,3d 219, 224 (4th Cir.2015); United States v. Alabama, 778 F.3d 926, 935 (11th Cir.2015); Sweeney v. Pence, 767 F.3d 654, 660 (7th Cir.2014); United States v. Porter, 745 F.3d 1035, 1042-43 (10th Cir.2014); Serna v. Law Office of Joseph Onwuteaka, P.C., 732 F.3d 440, 452 (5th Cir. 2013); In re Consol. Freightways Corp. of Delaware, 564 F.3d 1161, 1165-66 (9th Cir.2009). Compare United States v. Marshall, *618 798 F.3d 296, 309 (5th Cir.2015) (noting that the rule “might not apply because the words are not, strictly speaking, identical”), with In re Woods, 743 F.3d at 697 (declining to rest analysis on the rule because “the phrase as found in the [principal-residence-debt] exception has a different—in some respects more narrow—point of focus than the phrase as found in the [fifty-percent-farm-debt] rule”).

. An event or condition is sufficient if its existence means that another event or condition will occur. An event or condition is necessary if, in its absence, another event or condition could not occur. See Phillip M. Kannan, Symbolic Logic in Judicial Interpretation, 27 U. Mem. L.Rev. 85, 91 (1996). Thus, while Woodlee holds that the existence of foreseeability justifies (i.e„ is sufficient for) a penalty enhancement, Mr. Burkholder asks us to hold that if foreseeability is absent, a “results from” enhancement cannot be imposed. This is patently a logically distinct matter.

. To be clear, Woodlee was addressing a discrete challenge, asking whether “the government needed to show [the defendants] intended to, injure,” when some bodily injuty was foreseeable. 136 F.3d at 1405. It answered that narrow question by holding that foreseeability was sufficient. The Dissent’s suggestion that simply because Woodlee involved a sufficiency-of-the-evidence challenge that the court must have opined on all of the elements.that were necessary to establish the offense is misguided. The Supreme Court’s decision in Musacchio v. United States, — U.S. —, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016), which the Dissent cites, does not come close to supporting this proposition. In our adversary, common-law system, courts properly answer only the questions that the parties present to them and that are necessary for the resolution of the case at hand. See, e.g., Greenlaw v. United States, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) (noting adherence to the “principle of party presentation[,].... rely[ing] on the parties to frame the issues for decision”); Utah Poultry Producers Co-op. v. Union Pac. R. Co., 147 F.2d 975, 977 (10th Cir.1945) (“[I]t is not necessary for us to decide this [issue], because this is not tile issue as framed by the parties." (emphasis added)); see also United States v. Bader, 678 F.3d 858, 874 (10th Cir.2012) (noting regarding a sufficiency-of-the-evidence review of a conviction under 21 U.S.C. § 333(e) that the defendant “challenges the third of these three elements on appeal”); United States v. Poe, 556 F.3d 1113, 1125 (10th Cir. 2009) (noting, as to a sufficiency-of-the-evidence challenge to the offense of "possession of a firearm and ammunition after a previous felony conviction, in violation of 18 U.S.C. § 922(g)(1)” that ”[o]n appeal, [the defendant] disputes the sufficiency of the evidence as to the sécond element”). Indeed, in reviewing an instructional challenge rooted in a sufficiency-of-the-evidence question, as here, the Court in Burrage had no need to decide the question of whether 21 U.S.C. § 841 "contained "a foreseeability or proximate cause requirement,” Pet. for Writ of Cert. (dated Nov. 27, 2012), Burrage, 134 S.Ct. 881 (No. 12-7515), 2012 WL 7991899, at *1, because, in holding that the district court erred in instructing the jury that use of narcotics only *621 needed to be a contributing factor in the death, the Court simply needed fo rule that sugh use had to be at least a but-for cause of the death, see Burrage, 134 S.Ct. at 887.

. Mr. Burkholder cites to decisions from other circuits that also address whether the foreseeability of injury or death, rather than intent, is sufficient to impose a particular penalty. See, e.g., United States v. Hayes, 589 F.2d 811, 821 (5th Cir.1979); United States v. Guillette, 547 F.2d 743, 749 (2d Cir.1976). These cases are similarly inapposite to our inquiry into whether foreseeability is necessary to impose the penalty enhancement contemplated by § 841(b)(1)(E).