RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0141p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

No. 18-4081

JURMAINE A. JEFFRIES,

*Defendant-Appellee*.

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:16-cr-00180-1—Solomon Oliver, Jr., District Judge.

Argued: October 17, 2019

Decided and Filed: May 8, 2020

Before: BOGGS, BATCHELDER, and DONALD, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Megan R. Miller, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellant. Claire R. Cahoon, FEDERAL PUBLIC DEFENDER, Toledo, Ohio, for Appellee. **ON BRIEF:** Megan R. Miller, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellant. Claire R. Cahoon, FEDERAL PUBLIC DEFENDER, Toledo, Ohio, for Appellee.

BATCHELDER, J., delivered the opinion of the court in which BOGGS, J., joined. DONALD, J. (pp. 12–23), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Circuit Judge.  A jury convicted Jurmaine Jeffries of drug-related offenses, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  The district court granted Jeffries's motion for a new trial, finding that it erroneously failed to include jury instructions that required the United States to prove proximate causation in addition to but-for causation.  On appeal, the United States argues that § 841(b)(1)(C) requires proof of only but-for causation.  We agree and therefore **REVERSE** and **REMAND** for sentencing.

**I.**

On September 16, 2016, police officers discovered J.H. deceased in her home.  Near J.H.'s body lay an array of drug paraphernalia, including a small bag of brown powder, later determined to be .58 grams of fentanyl.  The officers found text messages in J.H.'s cellphone that indicated that she had attempted to buy or had bought drugs from Jeffries earlier that day.  The officers, pretending to be J.H., texted Jeffries and requested more drugs.

Forty-five minutes later, Jeffries arrived at J.H.'s home and the officers arrested him.  A search of Jeffries's car revealed separately packaged bags holding 1.69 grams of fentanyl, as well as a cellphone containing the text messages sent from J.H.'s cellphone.  In Jeffries's pocket, the officers found $446 and another bag of fentanyl, containing 36.14 grams of fentanyl.

Jeffries was charged with one count of possessing fentanyl with intent to distribute and one count of distributing fentanyl, the use of which resulted in death.  *See* 21 U.S.C. § 841(a)(1), (b)(1)(C).  At trial, two medical experts testified that the amount of fentanyl in J.H.'s system was "significantly above the lethal level" and that no other "anatomical issues" could have caused J.H.'s death.  R. 143, PageID#: 1662, 1664.

Jeffries asked the district court to instruct the jury that, to impose § 841(b)(1)(C)'s sentencing enhancement, the government was required to "prove beyond a reasonable doubt that the death of J.H. was the natural and foreseeable result of the defendant's actions."  R. 104,

PageID#: 709.  The district court, however, declined Jeffries's proposed jury instruction and instead told the jury that to convict under § 841(b)(1)(C):

> the [g]overnment must prove beyond a reasonable doubt that but for the use of the drugs the Defendant distributed, [J.H.] would not have died.  "But for" causation exist[s] where death would not have occurred had the controlled substance distributed by the Defendant not been ingested by [J.H.].  In other words, there is "but for" causation where use of the controlled substance, combined with other factors to produce death and death would not have occurred without the incremental effect of the controlled substance.

R 144, PageID#: 1825.  The jury returned a guilty verdict on both counts and found that § 841(b)(1)(C)'s sentencing enhancement applied to the distribution count.

Jeffries filed a motion for a new trial, alleging that the district court committed substantial legal error by failing to give his proposed proximate-cause jury instruction.  The district court viewed § 841(b)(1)(C)'s language as ambiguous and therefore turned to "traditional background principles of criminal liability" to insert a proximate-cause requirement into the penalty enhancement.  *United States v. Jeffries*, No. 5:16-cr-180, 2018 WL 9811109, at *5 (N.D. Ohio Oct. 1, 2018).  The district court accordingly held that it had made a substantial legal error by failing to include the proximate-cause jury instruction and granted Jeffries's motion for a new trial.  *Id.* at *8.  The United States timely appealed from the district court's judgment.

**II.**

The sole issue on appeal is whether the district court properly construed § 841(b)(1)(C) to require proof of proximate causation.  Because this is an issue of statutory interpretation, we review de novo.  *In re Application to Obtain Discovery for Use in Foreign Proceedings*, 939 F.3d 710, 717 (6th Cir. 2019).

**A.**

The Controlled Substances Act, Pub. L. No. 91-513, 84 Stat. 1242, *codified at* 21 U.S.C. § 801 *et seq.*, sets maximum and minimum penalties for drug offenses, tying the penalty for the offense to both the type of drug and the quantity involved.  *Burrage v. United States*, 571 U.S. 204, 208–09 (2014).  Here, the relevant offense is § 841(a)(1), which makes it unlawful to

knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a Schedule I or II substance. The Act categorizes fentanyl as a Schedule II substance—a drug that has "a high potential for abuse" and one that might "lead to severe psychological or physical dependence." § 812(b)(2).

Section 841(b)(1)(C) sets the maximum penalty for a violation of § 841(a)(1) and imposes a sentence of not more than twenty years. If, however, "death or injury results from the use of such substance," a defendant "shall be sentenced to a term of imprisonment of not less than twenty years or more than life." § 841(b)(1)(C). As § 841(b)(1)(C)'s penalty enhancement increases the statutory maximum penalty, it must be charged in the indictment and proven beyond a reasonable doubt by the prosecution. *See Alleyne v. United States*, 570 U.S. 99, 107– 08 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

The Supreme Court interpreted § 841(b)(1)(C)'s "results from" language in *Burrage v. United States*, 571 U.S. 204 (2014). In *Burrage*, a known drug addict died after injecting heroin distributed by the defendant. *Id.* at 206. Medical experts could only conclude that the "heroin was a contributing factor" without which the addict's death "would have been very less likely." *Id.* at 207 (internal quotation and editing marks omitted). The district court declined the defendant's jury instructions that required proof of but-for and proximate causation. *Id.* at 207–08. The jury was instead instructed that, to convict under § 841(b)(1)(C), the government need prove only that the heroin distributed by the defendant was a "contributing cause" of death. *Id.* at 208. The Supreme Court rejected the district court's contributing-cause jury instruction and held that a defendant cannot be liable under the death-enhancement provision unless the drug use is a but-for cause of the death. *Id.* at 218–19. The question of whether § 841(b)(1)(C) requires proof of proximate causation, however, went unanswered. *See id.* at 208, 218–19.

Whether § 841(b)(1)(C)'s penalty enhancement requires proof of proximate causation is a question of first impression for this court.[1] We note, however, that every sister circuit to address the question (before and after *Burrage*) holds that the penalty enhancement does not require

---

[1]Although this court has recently published an opinion dealing with the application of the enhancement in the context of a conspiracy to distribute drugs, *see United States v. Hamm*, 952 F.3d 728, 741–47 (6th Cir. 2020), it does not touch upon the issue we tackle here.

proof of proximate causation. *See United States v. Harden*, 893 F.3d 434, 447–49 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 394 (2018); *United States v. Alvarado*, 816 F.3d 242, 249–50 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 492 (2016); *United States v. Burkholder*, 816 F.3d 607, 617–18 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 623 (2017) (interpreting similar language in § 841(b)(1)(E)); *United States v. Webb*, 655 F.3d 1238, 1254–55 (11th Cir. 2011); *United States v. De La Cruz*, 514 F.3d 121, 137–38 (1st Cir. 2008); *United States v. Houston*, 406 F.3d 1121, 1124–25 (9th Cir. 2005); *United States v. Carbajal*, 290 F.3d 277, 283–85 (5th Cir. 2002); *United States v. McIntosh*, 236 F.3d 968, 972–73 (8th Cir. 2001) (abrogated on other grounds by *Burrage*, 571 U.S. at 204); *United States v. Robinson*, 167 F.3d 824, 830–32 (3d Cir. 1999); *United States v. Patterson*, 38 F.3d 139, 144–45 (4th Cir. 1994).[2]

## B.

We begin with the ordinary meaning of § 841(b)(1)(C)'s "results from" language. "A thing 'results' when it 'arises as an effect, issue, or outcome *from* some action, process or design.'" *Burrage*, 571 U.S. at 210–11 (internal editing marks omitted) (quoting 2 The New Shorter Oxford English Dictionary 2570 (1993)). The proper inquiry then is whether death arose as an effect, issue, or outcome from drug use. The causal relationship is accordingly between the decedent's use of the controlled substance and the resultant death. A proximate-cause or foreseeability requirement misunderstands the causal relationship between the conduct proscribed by § 841(a)(1) and the death from the use of a Schedule I or II drug. The question under this statute's language is whether death resulted from use of the controlled substance—not whether death was a foreseeable result of the defendant's § 841(a)(1) violation.

The specific context in which the "results from" language is used further indicates that only but-for causation is required. *See Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 321 (2014) ("[R]easonable statutory interpretation must account for both the specific context in which . . . language is used and the broader context of the statute as a whole.") (internal

---

[2]The dissent attaches much importance to the *Burrage* Court's grant of certiorari on the question of whether § 841(b)(1)(C) requires proof of proximate causation. The dissent opines that four justices may have concluded that every court of appeals to reach the proximate-cause issue had erred in its interpretation. We wonder why the dissent declines to give the same weight to the Supreme Court's denial of certiorari in the post-*Burrage* cases that held that § 841(b)(1)(C) requires proof of only but-for causation.

quotation marks omitted). Section 841(b)(1)(C) is merely the penalty tied to the conduct proscribed in § 841(a)(1). It does not speak to the defendant's conduct or the general causal connection between § 841(a)(1) and the death. The penalty provision speaks only to the specific connection between the use of the drugs distributed by the defendant and the death that resulted from that use. But Jeffries's proposed jury instructions would require the government to prove that the victim's death was a "natural and foreseeable result of [Jeffries's] *actions*." R. 104, PageID#: 709 (emphasis added). He therefore asks us to hold that § 841(b)(1)(C) requires proof that the defendant's § 841(a)(1) violation was the proximate cause of the death. The structure of the statute, however, belies that interpretation.

The broader context of the Controlled Substances Act further evinces the level of causation required to impose the penalty enhancement. *See Utility Air Regulatory Grp.*, 573 U.S. at 321. Use of a Schedule I or II controlled substance is inherently dangerous. Death to the drug user is therefore always foreseeable when a defendant manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute, or dispense those substances. When death results from the use of a Schedule I or II controlled substance, the causal link between the defendant's proscribed conduct and the death is simply not "so attenuated" as to preclude criminal liability. *See Paroline v. United States*, 572 U.S. 434, 445 (2014) (explaining that a proximate-cause requirement precludes liability where the consequence of a defendant's action "is more aptly described as mere fortuity").

Because the phrase "results from" is not ambiguous, it is unnecessary to look to traditional background principles of criminal liability to resolve the interpretive inquiry before us. It is true that

> [t]he law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause. When a crime requires not merely conduct but also a specified result of conduct, a defendant generally may not be convicted unless his conduct is both (1) the actual cause, and (2) the legal cause (often called the proximate cause) of the result.

*Burrage*, 571 U.S. at 210 (internal citations and quotation marks omitted). But Congress may abrogate traditional background principles of criminal liability when it "speak[s] directly to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993)

(internal quotation marks omitted). Courts may therefore "take it as a given that Congress has legislated with an expectation that the common law principle will apply except when a statutory purpose to the contrary is evident." *Id.* (internal quotation and editing marks omitted) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991)).

Congress spoke directly to the level of causation required to impose § 841(b)(1)(C)'s penalty enhancement.

> [T]he statute puts drug dealers and users on clear notice that their sentences will be enhanced if people die from using the drugs they distribute. Where serious bodily injury or death results from the distribution of certain drugs, Congress has elected to enhance a defendant's sentence regardless of whether the defendant knew or should have known that death would result.

*Robinson*, 167 F.3d at 830 (internal quotation marks and editing marks omitted) (quoting *Patterson*, 38 F.3d 139 at 145).

## C.

The district court found that § 841(b)(1)(C)'s "results from" language is ambiguous and therefore looked to general principles of criminal law to impose the proximate-cause requirement. The district court cited the *Burrage* Court's mode of statutory interpretation and noted that the Supreme Court pointed to extratextual sources throughout its interpretive inquiry. *Jeffries*, 2018 WL 9811109, at *5. Beyond considering the ordinary meaning of the phrase, the district court opined that the *Burrage* Court analyzed the traditional understanding of causation in criminal law, case law interpreting similar language, and the rule of lenity to reach its conclusion. *Id.* So, based on this analysis, the district court explained that "the *Burrage* [C]ourt may have viewed the statutory language of 'results from' as ambiguous," and accordingly held that the penalty enhancement is "broad enough, on its face, to encompass both proximate and but-for causation." *Id.*

The Supreme Court's mode of statutory analysis in *Burrage* does not support the district court's conclusion. Because "[t]he Controlled Substances Act does not define the phrase 'results from,'" the Court first ascertained the ordinary meaning of the phrase and held that the penalty enhancement requires proof of but-for causation. *Burrage*, 571 U.S. at 210–11. Only then did the Court turn to other legitimate tools of interpretation to bolster that conclusion. *Id.* at 211–14;

*see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 33 (explaining that statutory interpretation embraces not just textual purpose but also "a word's historical associations acquired from recurrent patterns of past usage").

Although the *Burrage* Court mentioned the rule of lenity, it did not invoke the rule to reach its holding. *Id*. at 216. *Burrage* rejected an interpretation of § 841(b)(1)(C) that would require the government to prove only that the drug use was a "contributing cause" of death. *Id.* at 208. In rejecting that interpretation, the Court explained that "[e]specially in the interpretation of a criminal statute subject to the rule of lenity, we cannot give the text a meaning that is different from its ordinary, accepted meaning, and that disfavors the defendant." *Id.* at 216 (internal citations omitted). But the Court did not *invoke* the rule to resolve its interpretive inquiry. *Burrage*'s mode of analysis therefore cannot support the district court's conclusion that § 841(b)(1)(C)'s penalty enhancement is ambiguous.

The district court's analysis is also incorrect insofar as it characterizes § 841(b)(1)(C) as a penalty enhancement of a strict-liability crime. *See Jeffries*, 2018 WL 9811109, at \*5. A strict-liability offense is "[a]n offense for which the action alone is enough to warrant a conviction, with no need to prove a mental state." *Strict-Liability Crime*, Black's Law Dictionary (11th ed. 2019). The criminal statute which Jeffries was convicted of violating contains an express mens rea requirement. *See* 21 U.S.C. § 841(a)(1) (making it unlawful for "any person *knowingly* or *intentionally* . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance") (emphasis added). To impose the enhanced penalty, the government must first prove beyond a reasonable doubt that the defendant "knowingly or intentionally" violated § 841(a)(1). Section 841(a)(1)'s mens rea provision thus necessarily prevents the categorization of § 841(b)(1)(C) as a penalty for a strict-liability criminal offense. *See Alvarado*, 816 F.3d at 250 (explaining that § 841(b)(1)(C) does not contain a separate mens rea element but rather "serves to elevate the crime of knowingly or intentionally distributing [controlled substances] to a more serious level").

The district court likewise erred when it held that its interpretation of § 841(b)(1)(C) was compelled by this court's decision in *United States v. Martinez*, 588 F.3d 301 (6th Cir. 2009). In that case, Martinez engaged in health-care fraud by "providing at-risk patients with treatments

that would leave them dependent on him for pain-suppressant prescriptions." *Id.* at 307. The government charged Martinez with, among other things, health-care fraud resulting in the death of patients, in violation of 18 U.S.C. § 1347 and § 1347(a)(2), the latter of which provides an enhanced penalty "if the violation results in death." *Id.* at 306, 309. At trial, the district court instructed the jury that to convict Martinez on the § 1347(a)(2) enhancement, it must find that the fraud was "the proximate cause of the death of the two patients." *Id.* at 318. The jury convicted Martinez of the § 1347 offenses and he appealed. *Id.* at 308–09.

Martinez challenged the sufficiency of the evidence to support his conviction under § 1347(a)(2)'s penalty enhancement. *Id.* at 317. Although the parties did not challenge the standard of causation required by the enhancement, we held that proximate cause was the appropriate standard to apply in interpreting the phrase "if the violation results in death" for purposes of Martinez's appeal. *Id.* at 318–19. We concluded that the jury could reasonably have found that the patients' addictions and overdoses were a reasonably foreseeable result of Martinez's fraudulent scheme. *Id.* at 319–23.

*Martinez* is not dispositive here for two reasons. First, despite their facial similarities, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 1347 are meaningfully distinct. Section 1347 criminalizes health-care fraud, which occurs when a defendant knowingly executes a "scheme or artifice" to defraud a health-care benefit program or fraudulently obtains money or property owned by a health-care benefit program in connection with the delivery of health-care services. § 1347(a). The penalty enhancement applies only if the defendant's fraud "results in" serious bodily injury or death to a third-party victim. § 1347(a)(2).

The health-care-fraud statute covers a wide range of illegal activity, which may or may not contemplate injury or death to third-party victims. *Compare Martinez*, 588 F.3d at 306–07, (health-care fraud through prescription of painkillers to drug addicts), *with United States v. Hunt*, 521 F.3d 636, 640–41 (6th Cir. 2008) (health-care fraud through a billing and kickback scheme). In circumstances in which the potential for injury or death is not an inherently foreseeable result of the conduct proscribed by § 1347, it might make sense to require the government to prove that it was reasonably foreseeable to the defendant that the conduct would be likely to lead to injury

or death, *see Martinez*, 588 F.3d at 319, and that the prohibited conduct was the proximate cause of the injury or death.

But § 841(b)(1)(C)'s enhanced penalty applies, not when the prohibited conduct, i.e., the distribution, manufacture, or dispensing of, or possession with the intent to distribute, manufacture, or dispense the controlled substance, results in death or injury, but when "death or injury results from *the use* of such substance." § 841(b)(1)(C) (emphasis added). It is always foreseeable that a violation of § 841(a)(1) will involve an ultimate user of the substance and that death or injury may result from that use. Because death or injury from the use of the substance is inherently foreseeable, there is no need to require the government to prove that they were reasonably foreseeable to the defendant. It therefore makes sense to require the government to prove only but-for causation in order to apply the enhanced penalty.

Finally, § 841(b)(1)(C)'s penalty enhancement is explicitly limited. Unlike the penalty enhancement in the health-care-fraud statute, which may apply if *any* violation of the statute results in death, § 841(b)(1)(C) applies *only* when the use of the substance results in death. So, for example, a defendant convicted under 21 U.S.C. § 841(a)(1) of distributing heroin is not subject to this enhanced penalty because someone was shot in the course of the distribution.

Second, *Martinez* responded to a defendant's sufficiency-of-the-evidence challenge, which required the court to evaluate the proximate-cause standard in light of the district court's proximate-cause jury instructions. The focus in *Martinez* was thus "on what is sufficient for the imposition of the penalty enhancement—*not*, as here, on what is necessary." *See Burkholder*, 316 F.3d at 620. In other words, *Martinez* "does not necessarily preclude the possibility that a less-demanding causation standard—such as but-for causation—would *also* be *sufficient*" to support imposition of § 1347(a)(2)'s penalty enhancement. *See id.* at 620, 620 n.11 ("In our adversary, common-law system, courts properly answer only the questions that the parties present to them and that are necessary for the resolution of the case at hand."). *Martinez* therefore cannot support the district court's interpretation.

**III.**

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** for sentencing.

_____

**DISSENT**

_____

BERNICE BOUIE DONALD, dissenting.  The "death results" enhancement in 21 U.S.C. § 841(b)(1)(C) is ambiguous.  In reaching a different conclusion, the majority ignores or fails to distinguish both Supreme Court and Circuit precedent.  Because the statute is ambiguous and should be interpreted against a common law backdrop, the Court should apply the rule of lenity and find in favor of the interpretation that is more favorable to the defendant.  I respectfully dissent.

21 U.S.C. § 841 provides a penalty enhancement for drug manufacturing, distribution, dispensation, or possession, with intent to do any of those things, of a controlled substance "if death or serious bodily injury results from the use of such substance."  21 U.S.C. § 841(a)(1) & (b)(1)(C).  The enhancement is significant.  When the enhancement applies, the sentence shall be "not less than twenty years [nor] more than life."  21 U.S.C. § 841(b)(1)(C).  Repeat offenders face mandatory "life imprisonment" if death results.  *Id.*  The issue in this case is whether the "death . . . results from the use of such substance" language requires proof of proximate cause.  The district court concluded it does; the majority concludes it does not.

### I.  Standard of Review

The Court reviews issues of statutory construction de novo, as they are pure questions of law. *United States v. Kassouf*, 144 F.3d 952, 955 (6th Cir. 1998).  In construing statutes, the Court begins with the plain language, and, if it is "unambiguous," then the "inquiry must cease." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  If the statute is ambiguous, the Court will turn to other tools of statutory construction.  As demonstrated below, Section 841's "death results" language is ambiguous, and those other tools favor requiring proof of proximate cause.

### II.  The Language of 18 U.S.C. § 841(b)(1)(C) Is Ambiguous

Here, the language is ambiguous.  In *Burrage v. United States*, the Supreme Court addressed the statute and language at issue in this case, concluding that it requires proof of actual

cause but declining to answer whether it requires proof of proximate cause. 571 U.S. 204, 210-11 (2014). The court began its analysis by noting that the "law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause . . . . (often called the proximate cause)." *Id.* at 210. The court explained that, in ordinary language, "[a] thing 'results' when it '[a]rise[s] as an effect, issue, or outcome *from* some action, process[,] or design.'" *Id.* at 210-11 (quoting The New Shorter Oxford English Dictionary 2570 (1993)). After rejecting the government's various arguments, the court concluded that "[e]specially in the interpretation of a criminal statute subject to the rule of lenity, we cannot give the text a meaning that is different from its ordinary, accepted meaning, and that disfavors the defendant." *Id.* at 216 (citation omitted). Justices Ginsburg and Sotomayor did not agree that the statute was unambiguous (in terms of actual cause) but did "agree that 'in the interpretation of a criminal statute subject to the rule of lenity,' where there is room for debate, one should not choose the construction 'that disfavors the defendant.'" *Id.* at 219 (Ginsburg, J., concurring) (quoting the majority opinion).

### A. The Supreme Court's Grant of Certiorari Suggests the Language Is Ambiguous

Although *Burrage* does not answer our question, it provides helpful guidance. In addition to the majority and concurrence's reliance on the rule of lenity with this specific statute's language in *Burrage*, the court also granted certiorari on the question of whether that language requires proof of proximate cause. *Id.* at 208, 210 ("Whether the defendant may be convicted under the 'death results' provision . . . without separately instructing the jury that it must decide whether the victim's death by drug overdose was a foreseeable result of the defendant's drug-trafficking offense."). In granting certiorari, the Supreme Court, at the very least, suggested that the statute is not as straightforward as the majority opines.

The "rule of four" is the Supreme Court's "practice of granting certiorari on the vote of four Justices." *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 521, 527 (1957) (Frankfurter, J., dissenting) (internal quotations omitted). Justice Frankfurter explained that "[t]he rule of four is not a command of Congress. It is a working rule devised by the Court as a practical mode of determining that a case is deserving of review, the theory being that if four Justices find that a

legal question of general importance is raised, that is ample proof that the question has such importance." *Id.* at 529 (internal quotations omitted).

As the majority highlighted in its opinion,[1] every circuit which had examined the question agreed that proximate cause was not required at the time that the court granted certiorari in *Burrage*.[2] *United States v. Webb*, 655 F.3d 1238, 1254-55 (11th Cir. 2011); *United States v. Houston*, 406 F.3d 1121, 1124-25 (9th Cir. 2005); *United States v. Carbajal*, 290 F.3d 277, 283-85 (5th Cir. 2002) (examining similar language in the sentencing guidelines); *United States v. Soler*, 275 F.3d 146, 152-53 (1st Cir. 2002)[3]; *United States v. McIntosh*, 236 F.3d 968, 972-73 (8th Cir. 2001) (abrogated on other grounds by *Burrage*, 571 U.S. at 204); *United States v. Robinson*, 167 F.3d 824, 830-32 (3d Cir. 1999); *United States v. Patterson*, 38 F.3d 139, 145 (4th Cir. 1994).

If every circuit agreed on the proximate cause issue, then why would the court grant certiorari?  No circuit split existed on the proximate cause issue.  *See* S. Ct. R. 10(a) (considerations governing review of certiorari).  A state court would not have commented on this federal statute.  *See id.*  Maybe, four justices believed that "a United States court of appeals . . . ha[d] so far departed from the accepted and usual course of judicial proceedings, . . . as to call for an exercise of this Court's supervisory power."  *Id.*  Maybe, four justices believed this issue is "an important question of federal law that has not been, but should be, settled by [the Supreme] Court."  *Id.*  No matter the answer, the grant of certiorari certainly suggests that four justices had some questions about whether proof of proximate cause is required under § 841(b)(1)(C)'s "death results" enhancement.  If the language were unambiguous as the majority and the other circuits find, then the Supreme Court would have had little to no reason to grant certiorari and ask the question.

---

[1]I will address the majority's reliance on some of these cases later in the opinion.

[2]This agreement is in contrast to the issue of actual cause where there was a circuit split.

[3]The majority cites to *United States v. De La Cruz*, 514 F.3d 121 (1st Cir. 2008), but that case was merely an extension of *Soler*, *see De La Cruz*, 514 F.3d at 137 (quoting *Soler*).  Maj. Op. at 5.

**B.** **The Out-of-Circuit Cases Provide Little Persuasive Value**

The majority's reliance on the other circuits is problematic, as circuits were often incorrect in their analysis on other issues related to this same statute and the logic was circular as courts began to simply refer to the decisions of the other courts. The Fourth Circuit was the first circuit to address our current question. *Patterson*, 38 F.3d 139. In *Patterson*, the court *incorrectly* held that the government only needed to prove the "death results" enhancement by a preponderance of the evidence. *Id.* at 144; *Burrage*, 571 U.S. at 210 ("[T]he 'death results' enhancement . . . is an element that must be submitted to the jury and found beyond a reasonable doubt."). Meanwhile, on the issue in this case, the court provided the following analysis:

> Quite simply, the plain language of § 841(b)(1)(C) does not require, nor does it indicate, that prior to applying the enhanced sentence, the district court must find that death resulting from the use of a drug distributed by a defendant was a reasonably foreseeable event. . . . The statute puts drug dealers and users on clear notice that their sentences will be enhanced if people die from using the drugs they distribute. Where serious bodily injury or death results from the distribution of certain drugs, Congress has elected to enhance a defendant's sentence regardless of whether the defendant knew or should have known that death would result. We will not second-guess this unequivocal choice.

*Patterson*, 38 F.3d at 145 (quotation of the statute and internal citations omitted). That's it; that single paragraph is the analysis on the issue in this case.

Likewise, the Third Circuit reached its decision—finding that proximate is not required—in *Robinson* and similarly offered almost no analysis. *United States v. Robinson*, 167 F.3d at 830-31. The court quoted the above paragraph from Patterson, and then wrote: "We will not [second-guess this unequivocal choice] either. After all, our role is to give effect to Congress's intent. Where, as here, Congress' language is plain and unambiguous, we simply apply the language of the statute as written." *Id.* (internal citations and quotations omitted). Meanwhile, the court also questioned its own result, recognizing that in some cases the causal connection "may be so remote a consequence from the criminal conduct of the defendant with respect to the substance that a court might conclude that it would not be consistent with congressional intent to apply the mandatory 20-year minimum sentence." *Id.* at 831-32.

The other cases follow a similar pattern. The majority admits that *McIntosh*, 236 F.3d 968, was abrogated by *Burrage*. *See* Maj. Op. at 8. Moreover, its analysis is only two sentences in addition to quotations from *Patterson* and *Robinson*. *McIntosh*, 236 F.3d at 972-73. Next, the court in *Carbajal*, 290 F.3d 277, analyzing almost verbatim sentencing guidelines, likewise only provided a paragraph of analysis, including the erroneous conclusion that the language "does not impose any sort of explicit causation requirement." *Id.* at 284; *Burrage*, 571 U.S. at 218-19 (holding that the language unambiguously requires proof of actual causation). Without citation to authority or explanation, the Ninth Circuit in *Houston* stated that the "passive language unambiguously eliminates any statutory requirement that the death have been foreseeable." 406 F.3d at 1124. In *Soler*, the court described the enhancement as a "rule of strict liability," 275 F.3d at 152, an idea which the majority explicitly rejects here. Maj. Op. at 9. In *Webb*, the court provided subsections to discuss the previous decisions by other circuits and then simply stated that "we agree." 655 F.3d at 1250-54. As a result of scant analysis, erroneous interpretations of the language at issue, and cross-referencing to the other cases, these decision offer almost no persuasive value, yet the majority began its analysis with a string citation to these very cases.

The majority also cites to several cases decided after *Burrage*, 571 U.S. 204. Maj. Op. at 5. These cases suffer from similar issues. In *United States v. Alvarado*, the Fourth Circuit merely stated that *Patterson*, 38 F.3d 139, was still good law after *Burrage*. *United States v. Alvarado*, 816 F.3d 242, 249-50 (4th Cir. 2016). Meanwhile, in *United States v. Burkholder*, 816 F.3d 607 (10th Cir. 2016), the court was divided on whether the statute required proof of proximate cause with Judge Briscoe delivering a strong dissent, which again suggests the ambiguous nature of the language. *Id.* at 621 (Briscoe, J., dissenting). Finally, in *United States v. Harden*, the Seventh Circuit relied almost exclusively on the decision in *Burkholder*. 893 F.3d 434, 448-49 (7th Cir. 2018) (repeatedly citing and quoting *Burkholder*, 816 F.3d 607). Although the cases look impressive as a whole, a cursory inspection of each case reveals that they stand on uneasy footing and should not be given the persuasive value proscribed by the majority.

**C.      Our Circuit's Case Law Makes It Clear that the Language Is Ambiguous**

Even if these cases were to offer persuasive value in other circuits, the Court's decision in *United States v. Martinez*, 588 F.3d 301 (6th Cir. 2009), forecloses the question and makes it clear that the language at issue here is ambiguous.   In *Martinez*, the Court examined the healthcare fraud statute, 18 U.S.C. § 1347, which contains an almost identical "death results" enhancement.  588 F.3d at 317.  Under § 1347, if a heath care fraud "violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life." 18 U.S.C. § 1347(a).  In *Martinez*, as the majority admits, "we held that proximate cause was the appropriate standard to apply in interpreting the phrase 'if the violation results in death.'"  Maj. Op. at 9.  Even the majority agrees this was a holding, not dicta.  *Id.*  It was also a multi-page analysis.  *Martinez*, 588 F.3d at 317-19.  If that language requires proof of proximate cause, then at the very least the statute at issue in this case is ambiguous.

The majority tries and fails to distinguish *Martinez*.   First, the majority notes that the parties did not challenge the proximate cause standard, but that does not change the fact that the Court, in *Martinez*, did its own de novo review of the proper legal standard, concluding that proof of proximate cause was required.  *Id.*   In fact, the court used the lack of a challenge to bolster its conclusion that the health care fraud "death results" enhancement requires proximate cause.  *Id.* at 318.  Next, the majority makes an inapposite comparison to the *Burkholder* court's rejection of  a case interpreting the "death results" language in the health care fraud statute: "The focus in *Martinez* was thus 'on what is sufficient for the imposition of the penalty enhancement—*not*, as here, on what is necessary.'"   Maj. Op. at 10. (quoting *Burkholder*, 316 F.3d at 620).  This quotation is misleading because, in *Martinez*, while the Court ultimately conducted a sufficiency analysis, the Court first ruled that proximate cause was *required* "in determining whether a health care fraud violation 'results in death,'" not merely sufficient. *Martinez*, 588 F.3d at 318-19.

The majority next makes the argument that the two statutes are different, although not convincingly because the language is nearly identical in the two statutes:

> *Martinez* is not dispositive here for two reasons. First, despite their facial similarities, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 1347 are meaningfully distinct. Section 1347 criminalizes health-care fraud, which occurs when a defendant knowingly executes a "scheme or artifice" to defraud a health-care benefit program or fraudulently obtains money or property owned by a health-care benefit program in connection with the delivery of health-care services. § 1347(a). The penalty enhancement applies only if the defendant's fraud "results in" serious bodily injury or death to a third-party victim. § 1347(a)(2).

> The health-care-fraud statute covers a wide range of illegal activity, which may or may not contemplate injury or death to third-party victims. *Compare Martinez*, 588 F.3d at 306-307, (health-care fraud through prescription of painkillers to drug addicts), *with United States v. Hunt*, 521 F.3d 636, 640-41 (6th Cir. 2008) (health-care fraud through a billing and kickback scheme). In circumstances in which the potential for injury or death is not an inherently foreseeable result of the conduct proscribed by § 1347, it may make sense to require the government to prove that it was reasonably foreseeable to the defendant that the conduct would be likely to lead to injury or death, *see Martinez*, 588 F.3d at 319, and that the prohibited conduct was the proximate cause of the injury or death.

> But § 841(b)(1)(C)'s enhanced penalty applies, not when the prohibited conduct, i.e., the distribution, manufacture, or dispensing of, or possession with the intent to distribute, manufacture, or dispense the controlled substance, results in death or injury, but when "death or injury results from *the use* of such substance." § 841(b)(1)(C) (emphasis added). It is always foreseeable that a violation of § 841(a)(1) will involve an ultimate user of the substance and that death or injury may result from that use. Because death or injury from the use of the substance is inherently foreseeable, there is no need to require the government to prove that they were reasonably foreseeable to the defendant. It therefore makes sense to require the government to prove only but-for causation in order to apply the enhanced penalty.

Maj. Op. at 9-10. The majority's logic is flawed. First, the majority admits that the language is facially similar. The distinction noted—health care fraud must "result in" the death versus "death or injury results from the use of such substance"—makes the need for a proximate cause requirement in § 841 even greater. Under the health care fraud statute, the death results enhancement is directly tied to the health care fraud violation whereas, under the death results enhancement in § 841, the enhancement is tied to the use of the drug by a third-party. With an intervening act—the use of the drug by a third party—directly tied to the enhancement, the Court should find that proof of proximate cause is even more necessary in § 841.

The majority also explicitly argues that it is always reasonably foreseeable that death will result if someone manufactures, distributes, dispenses, or possesses with intent to do any of those things. Maj. Op. at 10 ("It is always foreseeable that a violation of § 841(a)(1) will involve an ultimate user of the substance and that death or injury may result from that use."). If that is the case, then why would the Court not impose a proximate cause requirement for the rare case where it was not foreseeable. Judge Boggs even questioned the parties on various iterations of interesting scenarios where proximate cause would be questionable under § 841.

Additionally, the majority's citation to a billing and kickback scheme case, *United States v. Hunt*, 521 F.3d 636, 640-41 (6th Cir. 2008), is not relevant here because no death occurred in *Hunt*. Had death occurred, I would certainly be interested to see how the government could first prove actual causation. Finally, the majority argues the penalty enhancement in § 841 "is explicitly limited," citing a scenario where someone is "shot in the course of the distribution," Maj. Op. at 10. Of course, if a victim of healthcare fraud were shot, then this logic would equally apply to a healthcare fraud violation, as the healthcare violation would not have "resulted in" death because the gunshot was the actual cause of death.

At a minimum, the holding in *Martinez* shows that our Circuit finds the "death results" language ambiguous, and there is an argument that *Martinez* should simply control here. Imagine the scenario where a doctor fraudulently prescribes fentanyl and causes the death of one of his patients. Today, the majority creates the odd scenario where the government would have to prove proximate cause if he were charged under § 1347 but would not have to if he were charged under § 841. In combination with the Supreme Court's decision to grant certiorari and the lack of actual persuasive authority from the other circuits, it is clear that the "death results" language in § 841 is ambiguous as to whether it requires proof of proximate cause.

**III. The Other Considerations Weigh in Favor of Requiring Proof of Proximate Cause**

With an ambiguous statute, courts turn to other modes of statutory interpretation beyond plain language and presume that Congress intended to retain long-established common law principles. Proximate cause is one such principle. Furthermore, the Supreme Court disfavors strict liability statutes, and, despite the majority's attempts to say that this statute is not a strict

liability statute, it certainly has similarities to strict liability statutes, as many circuits have noted. Additionally, no policy concerns in this case justify such an extreme sentence when the death was not reasonably foreseeable. Finally, the Court should fall back on the rule of lenity and choose the construction that favors criminal defendants.

### A. Proximate Cause is a Fundamental Concept in Criminal Law

The Supreme Court has instructed courts "that statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *United States v. Texas*, 507 U.S. 529, 534 (1993) (citations and quotations omitted).

Proximate cause is a long-established and familiar principle in criminal law. In *Burrage*, 571 U.S. at 210-11, the court began its analysis, noting that the "law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause . . . . (often called the proximate cause)." In the same year it decided *Burrage*, in *Paroline v. United States*, the Supreme Court explained the meaning and importance of proximate cause at common law:

> [T]o say that one event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result. . . . Proximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct. A requirement of proximate cause thus serves to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity.

572 U.S. 434, 444-45 (2014) (internal citations omitted). The Supreme Court further explained the importance of proximate cause, noting that "[p]roximate cause is a standard aspect of causation in criminal law and the law of torts. Given proximate cause's traditional role in causation analysis, this Court has more than once found a proximate-cause requirement built into a statute that did not expressly impose one." *Id.* at 446 (internal citation omitted). Although the court was examining a statute with a specific reference to proximate cause in *Paroline*, it wrote that "[e]ven if [the statute] made no express reference to proximate causation, the Court might well hold that a showing of proximate cause was required." *Id.* While this was dicta, "[l]ower courts are obligated to follow Supreme Court dicta, particularly where there is not

substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *ACLU of Ky. v. McCreary Cty., Ky.*, 607 F.3d 439, 447 (6th Cir. 2010) (quotations omitted).

Here, because the language is ambiguous and Congress did not reveal a statutory purpose to the contrary, the Court should follow the common law and the dicta of the Supreme Court and require proof of proximate cause when applying the "death results" enhancement in § 841.

## B.      The Strict Liability Aspects of the § 841 Enhancement Also Favor Requiring Proof of Proximate Cause

Strict liability is generally disfavored in criminal law, and here textually the statute looks like a strict liability enhancement in some ways.  As such, the Court should favor the interpretation that limits strict liability and thus require proof of proximate cause.  "While strict-liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements, the limited circumstances in which Congress has created and this Court has recognized such offenses attest to their generally disfavored status."  *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437-38 (1978) (citations omitted).  Similar to the court's language in *Paroline*, the court, in *Gypsum*, declared, "[c]ertainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement."  *Id.* at 438.

Here, the majority is correct that the statute contains a mens rea requirement, but the "death results" enhancement does not.  Our Circuit has actually described the enhancement as a strict liability enhancement.  "On its face, [21 U.S.C. § 841] is, in effect, a strict liability statute with respect to the injury or death of another arising out of the distribution of drugs."  *United States v. Rebmann*, 226 F.3d 521, 525 (6th Cir. 2000) (overruled on other grounds).  The same circuits that the majority cites for persuasive value have also described the enhancement in strict liability terms.  *See Harden*, 893 F.3d at 448 ("[D]ue to the extremely hazardous nature of drug distribution, a policy of strict liability when death occurs fits the statutory language and its evident purpose."); *Burkholder*, 816 F.3d at 623-24 (Briscoe, J., dissenting) (discussing the enhancement in a parallel provision in terms of strict liability); *Webb*, 655 F.3d at 1252, 1258 nn.13, 17 (quoting and citing approvingly to other circuits who described the enhancement in

strict liability terms); *Carbajal*, 290 F.3d at 284 ("We therefore hold, in accordance with out sister circuits' interpretation of § 841(b)(1)(C), that § 2D1.1(a)(2) is a strict liability provision and does not require proof of proximate causation or reasonable foreseeability."); *Soler*, 275 F.3d at 152 (finding that "a rule of strict liability applies"); *McIntosh*, 236 F.3d at 974 ("Our conclusion that the statute imposes strict liability upon [the defendant] for [the victim's] death vitiates that argument.").

Because the "death results" enhancement has the markings of a strict liability statute, the Court should find, if not an intent element, then at least a proximate cause requirement in the statute.

**C.      There Is No Policy Favoring Eliminating a Proximate Cause Requirement for the "Death Results" Enhancement.**

In *Burrage*, the government argued that a but-for causation requirement would "prove a policy disaster." 571 U.S. at 216-17. The Supreme Court outright rejected that argument. *Id.* The government and the majority do not even attempt to make that argument for proximate cause, instead conceding that in all cases the government will have no issue proving proximate cause. Maj. Op. at 6 ("Use of a Schedule I or II controlled substance is inherently dangerous. Death to the drug user is therefore always foreseeable when a defendant manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute, or dispense those substances."). Without a competing policy, the Court should fall back on the policies of the common law and require proof of proximate cause for those cases where foreseeability is not so certain.

**D.      The Rule of Lenity Also Dictates Requiring Proof of Proximate Cause**

Finally, the rule of lenity controls here. The rule of lenity holds that "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *Smith v. United States*, 508 U.S. 223, 246 (1993) (Scalia, J., dissenting) (citations and quotations omitted). Here, the statute is ambiguous (at minimum), and therefore the Court should choose the construction that is more favorable to the defendant, requiring proof of proximate cause to apply the "death results" enhancement. That conclusion is only bolstered by both the majority and dissent's reference to the rule of lenity in *Burrage*. 571 U.S. at 216 ("Especially in the interpretation of a

criminal statute subject to the rule of lenity, we cannot give the text a meaning that is different from its ordinary, accepted meaning, and that disfavors the defendant." (internal citation omitted)); *id.* at 219 (Ginsburg, J., concurring) ("I do agree that 'in the interpretation of a criminal statute subject to the rule of lenity,' where there is room for debate, one should not choose the construction 'that disfavors the defendant." (quoting the majority)). In sum, the rule of lenity should apply in this case and requires an interpretation of § 841 which favors the defendant.

## IV. Conclusion

For the foregoing reasons, I respectfully dissent and would require the government to prove proximate cause for the "death results" enhancement in 21 U.S.C. § 841.