RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0384p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 19-6061

TRONTEZ MAHAFFEY,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 2:17-cr-00054-1—David L. Bunning, District Judge.

Argued: December 4, 2020

Decided and Filed: December 18, 2020

Before: SILER, CLAY, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Medora M. Akers, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellant. James T. Chapman, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. **ON BRIEF:** Medora M. Akers, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellant. James T. Chapman, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

GRIFFIN, Circuit Judge.

For nearly twenty years, our circuit has held that a drug-trafficking conviction under 21 U.S.C. § 841 does not require proof that the defendant knew the type or quantity of controlled

substance involved in the offense. *See United States v. Hamm*, 952 F.3d 728, 739 (6th Cir. 2020); *United States v. Dado*, 759 F.3d 550, 569–71 (6th Cir. 2014); *United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003); *United States v. Garcia*, 252 F.3d 838, 844 (6th Cir. 2001). In this appeal, the sole issue is whether the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), abrogated our precedent. We hold that it did not.

## I.

Law enforcement officials arrested defendant Trontez Mahaffey and a companion at the Cincinnati/Northern Kentucky International Airport for suspected drug trafficking. Each possessed luggage containing about forty pounds of vacuum-sealed marijuana. And hidden within one of Mahaffey's marijuana parcels was four pounds of methamphetamine.

A grand jury indicted defendant on three counts under 21 U.S.C. §§ 841(a)(1), 846: (1) conspiracy to possess with the intent to distribute methamphetamine; (2) possession with the intent to distribute methamphetamine; and (3) possession with the intent to distribute marijuana. During his trial, the government did not establish Mahaffey knew about the methamphetamine—the evidence indicated only that the pair flew to Phoenix, Arizona, picked up the drug-laden luggage, and then flew back to metropolitan Cincinnati. A jury convicted defendant of all counts and attributed to him 500 grams or more of a mixture containing methamphetamine. The district court then imposed a mandatory-minimum sentence of ten years. Mahaffey timely appeals and we affirm.

## II.

### A.

The Anti-Drug Abuse Act of 1986 created a tiered-sentencing scheme for drug-trafficking offenses tied "to both the type of drug and the quantity involved." *Burrage v. United States*, 571 U.S. 204, 209 (2014). Two provisions are relevant here. First, § 841(a) makes it a crime "for any person *knowingly* or intentionally . . . to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." (Emphasis added). Second, for "any person who violates subsection (a)," § 841(b)(1) sets forth a penalty

that depends upon the drug type and quantity "*involv[ed]*" in the violation.[1] (Emphasis added). Mahaffey's violation "involved" "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine," so § 841(b)(1)(A)(viii) provided that he "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." Without the methamphetamine, the statutory maximum for the marijuana would have been no more than five years. § 841(b)(1)(D).

Mahaffey does not dispute that he knew he was trafficking marijuana. On appeal, he contends the government should have been required to prove under § 841 that he knew about the methamphetamine.[2] The jury instructions on this issue provided otherwise. Mahaffey did not object to them (and understandably so, for they were consistent with our caselaw and *Rehaif* did not issue until after his trial). Ordinarily, that failure would result in plain-error review. *United States v. Gray*, 521 F.3d 514, 540 (6th Cir. 2008). However, the government did not raise that demanding standard, and thus has forfeited its benefits. *United States v. Williams*, 641 F.3d 758, 764 (6th Cir. 2011). So we review this issue of statutory interpretation de novo. *United States v. Jeffries*, 958 F.3d 517, 519 (6th Cir. 2020).

## B.

Contrary to Mahaffey's position, we, along with our sister circuits, have consistently held that for drug-trafficking prosecutions under § 841, the government need not "prove mens rea as to the type and quantity of the drugs." *Garcia*, 252 F.3d at 844; *see United States v. Collazo*, --- F.3d ---, 2020 WL 7052298, at *14 & n.21 (9th Cir. 2020) (en banc) (collecting cases). Normally, that would end the inquiry. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1095 (6th Cir. 2010). However, a panel of this court may set aside prior precedent if it conflicts with an

---

[1]Congress subsequently extended this sentencing scheme to conspiracy convictions, *see* § 846, and as such, we have treated the provisions identically. *See Villarce*, 323 F.3d at 439 n.1.

[2]To the extent Mahaffey argues that punishing him for the methamphetamine while mistakenly believing that his luggage only contained marijuana runs counter to due process, he has forfeited our consideration of that issue because he did not include it in his statement of issues. *United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016). Forfeiture notwithstanding, he did not raise that issue in district court, so our review is for plain error. *Id.* And the district court could not have plainly erred here for there is no "binding law that answers the question presented." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015). Indeed, *Dado* provides that we have "not resolved whether § 841(b) can survive a due process challenge." 759 F.3d at 571.

intervening decision of the Supreme Court. *Miller v. Caudill*, 936 F.3d 442, 447–48 (6th Cir. 2019). Mahaffey relies upon the Supreme Court's 2019 decision in *Rehaif* as such a case.

*Rehaif* examined the interplay between 18 U.S.C § 922(g)'s prohibition on unlawful aliens possessing firearms and § 924(a)(2)'s provision that "whoever knowingly violates" § 922 be subject to up to ten-years imprisonment. 139 S. Ct. at 2194. The issue presented there was whether the "knowingly" requirement applied to both the defendant's conduct (possession of a firearm) and his status (being an unlawful alien). *Id.* Given the "presumption in favor of scienter" and the statute's text, the Court held "that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200.

Although *Rehaif* addressed an entirely different section of the criminal code, several aspects of its reasoning are relevant for our purposes. The Court started by emphasizing the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Id.* at 2195 (internal quotation marks omitted). This "presumption in favor of 'scienter' . . . mean[s] a presumption that criminal statutes require the degree of knowledge sufficient to mak[e] a person legally responsible for the consequences of his or her act or omission . . . even when Congress does not specify any scienter in the statutory text." *Id.* (internal quotation marks omitted). And "when Congress includes a general scienter provision in the statute itself," it "applies with equal or greater force." *Id.*

The Court then determined that the presumption applied to the statutory scheme at issue in *Rehaif*, holding that as a matter of statutory interpretation, the term "knowingly" modified every element of the crime. It stated: "The term 'knowingly' in § 924(a)(2) modifies the verb 'violates' and its direct object, which in this case is § 922(g). . . . [T]he text of § 922(g) simply lists the elements that make a defendant's behavior criminal. As a matter of ordinary English grammar, we normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime." *Id.* at 2195–96 (internal quotation marks omitted). "[B]y specifying that a defendant may be convicted only if he knowingly violates § 922(g)," the Court

continued, "Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." *Id.* at 2196 (internal quotation marks omitted). So because § 922(g)'s elements include both an illegal status and possession of a firearm, the government must prove knowledge of both. *Id.* But the Supreme Court was careful to cabin this holding to just prosecutions under §§ 922(g) and 924(a)(2). *Id.* at 2200 ("We express no view, however, about what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions not at issue here.").

Finally, the *Rehaif* Court concluded that this textual analysis was consistent with a "basic principle of criminal law"—requiring a "knowing[]" violation helps "separate those who understand the wrongful nature of their act from those who do not." *Id.* at 2196. That is, the mens rea component prevents the criminalization of "an innocent mistake to which criminal sanctions normally do not attach." *Id.* at 2197. And as it applies to the firearm proscriptions at issue there, "the defendant's status is the 'crucial element' separating innocent from wrongful conduct." *Id.* (citation omitted).

## C.

The question we must address now is whether *Rehaif*'s "legal reasoning is directly applicable to the issue at hand" to "undercut" our prior caselaw. *United States v. White*, 920 F.3d 1109, 1113 (6th Cir. 2019). At least three of our sister circuits have rejected grafting *Rehaif*'s reasoning onto 21 U.S.C. § 841. *See, e.g.*, *Collazo*, 2020 WL 7052298, at *6–14; *United States v. Mejía Romero*, 822 F. App'x 1, 3–4 (1st Cir. 2020), *United States v. Vela Diaz*, 793 F. App'x 351, 351 (5th Cir. 2020) (per curiam). For the following reasons, we do as well and hold that *Rehaif* does not require the government to prove that a defendant had knowledge of the type or quantity of the controlled substance he trafficked under § 841.

## 1.

First, *Rehaif* did not break new ground from a statutory-interpretation standpoint. It has long been a rule of criminal law "that determining the mental state required for commission of a federal crime requires construction of the statute and inference of the intent of Congress." *Staples v. United States*, 511 U.S. 600, 605 (1994) (internal quotation marks and ellipsis

omitted); *see Rehaif*, 139 S. Ct. at 2195 (citing *Staples*). Caselaw interpreting § 841 from the Supreme Court, our circuit, and our sister circuits confirms Congress did not intend a mens rea requirement for drug quantity and type.

"[T]he starting place in our inquiry" is the statute's language. *Staples*, 511 U.S. at 605. And four years before *Rehaif*, the Supreme Court stated that "[t]he ordinary meaning of § 841(a)(1) . . . requires a defendant to know only that the substance he is dealing with is some unspecified substance listed on the federal drug schedules." *McFadden v. United States*, 576 U.S. 186, 192 (2015). Thus, under the statute's plain language, the government need only show "the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was." *Id.*; *see also id.* at 194. In so reasoning, the Court rejected an argument—by analogy to the gun crime at issue in *Staples*—that a defendant must "know the features of the substance that brought it within the scope" of the act because of "textual distinction[s]" between the two statutes. *Id.* at 196. More precisely, *McFadden* stressed that § 841(a)'s "scope" hinges upon the "controlled" nature of a substance, and nothing more. *Id.*

Our caselaw is consistent with *McFadden*. From *Garcia* forward, we have interpreted § 841(a) to "define[ the] complete offense" of drug trafficking. *See Dean v. United States*, 556 U.S. 568, 571 (2009). Section 841(a) requires only that a defendant "*knowingly*" possess "*a controlled substance*." *Dado*, 759 F.3d at 570 (quoting § 841(a)(1) (emphases added)). "Drug type and quantity are irrelevant to this *mens rea* element." *Id.*; *see also United States v. Barbosa*, 271 F.3d 438, 458 (3d Cir. 2001) ("[A defendant]'s awareness that he was trafficking in what he believed was a controlled substance, albeit a different type for which he was arrested, is all that is required to satisfy the *mens rea* portion of the substantive offense.").

But when it comes to § 841(b)(1)'s assessment of increased penalties for different combinations of drug types and quantities, its "plain language . . . require[s] only that the specified drug types and quantities be 'involved' in an offense." *Dado*, 759 F.3d at 570 (internal quotation marks omitted). This means § 841(b)(1) "allows for strict liability as to the type and quantity of the drugs involved in a § 841(a) offense." *Id.*; *see also Collazo*, 2020 WL 7052298, at *11 ("There is no natural or ordinary way to read the intent requirement in § 841(a)(1) as

modifying the drug types and quantities in § 841(b)."); *United States v. Gunter*, 551 F.3d 472, 485 (6th Cir. 2009) ("[I]ntent is irrelevant to the penalty provisions of § 841(b).").

"[W]e ordinarily resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997). Congress's inclusion of "knowingly" in subsection (a) but not (b)(1) means "Congress act[ed] intentionally and purposely" in omitting an intent requirement from § 841(b)(1). *Dean*, 556 U.S. at 573 (citation omitted). Further supporting this intentional-omission conclusion is Congress's inclusion of a "knowingly" requirement within the same subsection, § 841(b)(6), which provides certain penalties for "[a]ny person who violates subsection (a), or attempts to do so, and knowingly or intentionally uses a poison, chemical, or other hazardous substance on Federal land." This "shows that Congress knew how to require proof of mens rea with respect to the predicate facts for sentences under § 841(b), and chose not to do so in § 841(b)(1)." *Collazo*, 2020 WL 7052298, at *11. Textually, therefore, there is no reason to apply § 841(a)'s knowledge requirement to § 841(b)(1). *See Dado*, 759 F.3d at 570 (characterizing this argument as "confus[ing] two distinct concepts— quantum of proof and *mens rea*"); *Villarce*, 323 F.3d at 439 ("[T]he drug quantity element of the offense is entirely independent of the mens rea requirement."). Nothing in *Rehaif*'s statutory analysis requires us to revisit that well-reasoned conclusion.

Mahaffey responds by reading § 841(a)'s "a controlled substance" differently. He argues that provision "acts as a generic placeholder for the specific drug types and quantities that are spelled out in § 841(b)." Under his reading, "knowingly" transfers neatly down to § 841(b)(1)'s drug type/quantity specifications. But that cannot be, for in addition to contradicting our precedent, *see Dado*, 759 F.3d at 570, the statute's definitions section expressly defines "controlled substance" as "a drug or other substance . . . included in" the statute's schedules, § 802(6), and it is not our province to redline Congress's carefully chosen words.

Nor do we agree with defendant that the statutory structure at issue in *Rehaif* is comparable to § 841. *Rehaif* addressed two separate provisions that nested together to both prohibit gun possession for certain individuals (18 U.S.C. § 922(g)) and set a statutory-maximum sentence for a knowing violation of the prohibition (§ 924(a)(2)). But unlike in *Rehaif* where the "knowingly" requirement "modifie[d] the verb 'violates' and its direct object, . . . § 922(g),"

139 S. Ct. at 2195, "knowingly" as used in 21 U.S.C. § 841(a) applies just within that subsection to cover the statute's verbs (i.e., "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense") and "the object of those verbs—'a controlled substance.'" *McFadden*, 576 U.S. at 191 (emphasis omitted).**³** As the Ninth Circuit sitting en banc recently recognized, "[s]ection 841(b) is not the object of the verbs in § 841(a)(1)." *Collazo*, 2020 WL 7052298, at *11. It plainly contains no such knowledge requirement; instead, the only triggering word there is "involving."

Moreover, if we were to accept Mahaffey's argument, we would need to find that *Rehaif* abrogated *McFadden*'s conclusion that "[t]he ordinary meaning of § 841(a)(1) thus requires a defendant to know only that the substance he is dealing with *is some unspecified substance* listed on the federal drug schedules." 576 U.S. at 192 (emphasis added). That is a far stretch. The Court usually overrules its prior decisions "directly, rather than act in such an ambiguous manner," *Rayner v. Mills*, 685 F.3d 631, 639 n.6 (6th Cir. 2012) (citation omitted), and has cautioned against concluding its "more recent cases have, by implication, overruled an earlier precedent," *Agostini v. Felton*, 521 U.S. 203, 237 (1997). But more to the point and as discussed, the "textual distinction[s]" between the firearm provisions at issue in *Rehaif* and the drug provisions at issue in *McFadden* (and here) are vast. *McFadden*, 576 U.S. at 196.

2.

Second, *Rehaif*'s scienter focus is not a new legal development or a fit for § 841. *Rehaif* reminds us that when looking at congressional intent, "we start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements *that criminalize otherwise innocent conduct*.'" 139 S. Ct. at 2195 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) (emphasis added)); *see also Carter v. United States*, 530 U.S. 255, 269 (2000)

---

**³**To be sure, *McFadden* considered a slightly different question: how, under the Controlled Substance Analogue Enforcement Act of 1986, the government may establish § 841(a)'s knowledge requirement when the controlled substance is an analogue. 576 U.S. at 188–89. But we see no principled way to disregard *McFadden*. It is undisputed that Mahaffey knew his luggage contained a controlled substance when he trafficked it from the Southwest to the Midwest. That he did not know the specific controlled substance is of no import under *McFadden*, because its "controlled" nature brought it "within the scope" of § 841(a). *Id.* at 196.

("The presumption in favor of scienter requires a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." (internal quotation marks omitted)). *Rehaif* provides good examples of this concept: application of a knowledge requirement to 18 U.S.C. § 922(g)'s status element means the gun proscription does not "apply to an alien who was brought into the United States unlawfully as a small child and was therefore unaware of his unlawful status" or "to a person who was convicted of a prior crime but sentenced only to probation, who does not know that the crime is 'punishable by imprisonment for a term exceeding one year.'" 139 S. Ct. at 2198 (emphasis omitted).

In contrast, 21 U.S.C. § 841 presents no embracing-legal-activity concern. Its terms, including the mens rea component, remove any possibility of covering innocent conduct; there simply "is no risk that, absent a requirement that the defendant knew the quantity and type of narcotics involved in the offense [that] his apparently innocent conduct will be criminalized." *United States v. King*, 345 F.3d 149, 153 (2d Cir. 2003); *see also Collazo*, 2020 WL 7052298, at *12 ("Regardless of the type and quantity of the controlled substance, there is no risk that a defendant would fail to understand the unlawful nature of the act."). Put differently, the drug type and quantity finding serves not to convict an innocent actor, but rather to increase a defendant's sentence once convicted. *See United States v. Kettles*, 970 F.3d 637, 646–47 (6th Cir. 2020) (examining a similarly structured statute, 18 U.S.C. § 1591, that sets forth a mandatory-minimum sentence for knowingly sex trafficking a minor who "had not attained the age of 14 years at the time of such offense").

This makes sense. "Criminal intent serves to separate those who understand the wrongful nature of their act from those who do not, but does not require knowledge of the precise consequences that may flow from that act once aware that the act is wrongful." *X-Citement Video*, 513 U.S. at 73 n.3; *see also Dean*, 556 U.S. at 575 ("It is unusual to impose criminal punishment for the consequences of purely accidental conduct. But it is not unusual to punish individuals for the unintended consequence of their *unlawful* acts."). This common-law concept predates our country's founding. *See* 4 W. Blackstone, Commentaries on the Laws of England 26–27 (1769). And, applying this principle, the Supreme Court has not hesitated to affirm statutory enhancements for unintentional acts. *See, e.g.*, *Dean*, 556 U.S. at 572–77 (declining to

read an intent element into a statutory enhancement for discharging a firearm during the commission of a crime of violence).

We do the same here.  There is no disputing Mahaffey knew "from the very outset that his planned course of conduct [wa]s wrongful."  *United States v. Feola*, 420 U.S. 671, 685 (1975).  That he did not appreciate the exact consequences of his predetermined criminal conduct—i.e., that it "involved" large amounts of methamphetamine under § 841(b)(1)—makes no difference for purposes of his decision to unlawfully possess a controlled substance with the intent to distribute.  *Rehaif*'s scienter presumption simply does not apply to this statutory scheme.

## III.

For these reasons, we affirm the district court's judgment.